| | |
|---|---|
| ALFRED KNOX, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE BANK (USA), N.A., <br><br> Defendant. | Case No.: 20-cv-1403 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for conduct that violates the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), the Wisconsin statutory Right of Privacy, Wis. Stat. § 995.50, and the common law.

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1681n and 1681o, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its solicitation efforts into the District.

## PARTIES

3. Plaintiff Alfred Knox is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FCRA, 15 U.S.C. § 1681a(c), in that he is an individual natural person.

5. Defendant Capital One Bank (USA), N.A. ("Capital One") is a federally chartered bank. Capital One is a primary subsidiary of Capital One Financial Corporation, a financial

holding company which has a principal place of business in McLean, Virginia. Capital One transacts business throughout the United States, including within this District.

6. Capital One offers revolving open-end credit card accounts to consumers nationally. In recent years, Capital One has opened thousands of consumer credit card accounts.

7. Capital One is a "person" as defined in the FCRA, 15 U.S.C. § 1681a(b), in that Capital One is a corporation or other entity that obtained credit information under false pretenses.

**FACTS**

8. On or about January 1, 2009, Plaintiff's spouse, Gloria Knox, died.

9. Ms. Knox was alternatively known as either "Gloria Myles Knox" and as "Gloria J. Knox."

10. While Plaintiff was grieving the loss of Ms. Knox, Capital One mailed to Plaintiff's address numerous credit card solicitations.

11. Many, or all, of these solicitations were mailed on envelopes stating that they were "Pre-Qualified" offers.

12. Many, or all, of these solicitations were in fact "firm" offers of credit in that they would have been honored if Ms. Knox was determined, based on information in a consumer report on Ms. Knox, to meet the specific criteria used to select Ms. Knox for the offer.

13. Upon information and belief, many, or all, of these solicitations were made after Capital One obtained Ms. Knox's credit information from one or more consumer reporting agencies in connection with these firm offers of credit.

14. Upon information and belief, many, or all, of these solicitations were made after Capital One obtained Plaintiff's own credit information from one or more consumer reporting agencies in connection with these firm offers of credit made to Ms. Knox.

15. Plaintiff, grieving the loss of Ms. Knox, was distressed and distraught to receive these offers of credit in mail addressed to Ms. Knox.

16. Plaintiff received these solicitations addressed to Ms. Knox for several years.

17. Although Plaintiff usually discarded these solicitations, he kept them on some occasions.

18. These solicitations provided a telephone number for the "National Consumer Opt-Out Hotline."

19. The purpose of the "National Consumer Opt-Out Hotline" is to allow the consumer to trigger their rights to elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency in connection with a credit or insurance transaction that is not initiated by the consumer and stop receiving firm offers of credit or insurance that are not initiated by the consumer. *See,* 15 U.S.C. §§ 1681b(e); 1681m(d)(2).

20. Non-party Equifax, Inc. ("Equifax") is a foreign business corporation with its principal place of business located at 1550 Peachtree Street NE Atlanta, Georgia 30309.

21. Non-party Experian Information Solutions, Inc. ("Experian") is a foreign business corporation with its principal place of business located at 475 Anton Blvd, Costa Mesa, California 92626.

22. Non-party Trans Union, LLC ("TransUnion") is a foreign limited liability company with its principal place of business located at 555 West Adams, Chicago, Illinois 60661.

23. Each of Equifax, Experian, and TransUnion is a "consumer reporting agency" under 15 U.S.C. § 1681a(f) in that, each , by means of interstate commerce and for monetary fees, regularly engages in the practices of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

24. Together, Equifax, Experian, and TransUnion (together, "The Three CRAs") are the three major, nationwide credit-reporting companies that track and rate financial history of U.S. consumers. The Three CRAs are supplied with data bout loans, loan payments, and credit cards, as well as information on everything from child support payments, credit limits, missed rent and utilities payments, addresses, and employer history. All this information and more is considered in calculating the consumer's "credit score."

25. With respect to The Three CRAs, there is only one opt-out hotline, which The Three CRAs jointly established, maintain, and administer. 15 U.S.C. § 1681b(e)(6).

26. In 2017, Plaintiff Knox called the national consumer Opt-Out hotline and requested that solicitations for Gloria Knox be stopped because she was deceased. http://www.optoutprescreen.com/faq ("You may only submit an Opt-In or Opt-Out request for yourself and/or for third parties for whom you are the legal parent, guardian, executor, administrator, etc.").

27. Despite this request, solicitations from Capital One continued to be sent to Gloria Knox and received by Plaintiff Knox.

28. Upon information and belief, notwithstanding that Plaintiff Knox called the national consumer Opt-Out hotline to request that solicitations for Gloria Knox be stopped, each of The Three CRAs failed to process Plaintiff Knox's request to exclude Gloria Knox's name and address from lists provided by The Three CRAs in connection with firm offers of credit.

29. Upon information and belief, the credit reports that The Three CRAs provided to Capital One stated that Gloria Knox was deceased.

30. Sometime in or about March 2018, after receiving what he estimated to be hundreds of these solicitations purporting to offer credit to his deceased spouse, Plaintiff contacted Capital

4

One by telephone to advise Capital One that Ms. Knox had passed away and ask that Capital One cease and desist mailing these offers of credit because they were causing him additional grief. The agent for Capital One apologized and promised that the solicitations would stop.

31. Notwithstanding Plaintiff's plea, Capital One continued to mail solicitations addressed to Ms. Knox at Plaintiff's home.

32. During the summer of 2018, Capital One initiated 2 telephone calls to the Plaintiff. During each call, Plaintiff Knox again advised Capital One that Ms. Knox had passed away, pleading with Capital One to stop sending these solicitations. Each time, the telephone representative stated that Capital One would stop the solicitations.

33. Despite all of these assurances from Capital One, Plaintiff Knox received advertising from Capital One addressed to his deceased spouse, as often as four times per week, and sometimes receiving more than one letter on the same day.

34. At this point, Plaintiff stopped discarding these solicitations after calling Capital One, and instead retained the solicitations addressed to Ms. Knox.

35. Exhibits A and B are examples of the solicitations mailed by Capital One addressed to "Gloria J. Knox" (Exhibit A) or "Knox G. Myles" (Exhibit B) and received by Plaintiff at his home, and retained by him. Knox received numerous, different forms of solicitations addressed to his deceased wife.

36. Plaintiff sometimes recorded the dates that the solicitations were received at his address.

37. On or about September 19, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

38. On or about September 19, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

39. On or about October 10, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

40. On or about October 11, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

41. On or about October 16, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

42. On or about October 17, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

43. On or about October 24, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

44. On or about October 29, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

45. On or about October 30, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

46. On or about November 1, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

47. On or about November 7, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

48. On or about November 16, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

49. On or about November 16, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

50. On or about November 21, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

51. On or about November 27, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

52. On or about December 3, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

53. On or about December 3, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

54. On or about December 9, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

55. On or about December 9, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

56. On or about December 20, 2018, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

57. On or about December 20, 2018, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

58. On or about January 10, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

59. On or about January 14, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

60. On or about January 29, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

61. On or about February 6, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

62. On or about February 6, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

63. On or about March 12, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

64. On or about March 18, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

65. On or about March 27, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

66. On or about April 9, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

67. On or about April 10, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

68. On or about April 16, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

69. On or about April 16, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

70. On or about April 25, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

71. On or about April 26, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

72. On or about May 1, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

73. On or about May 10, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

74. On or about May 14, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

75. On or about May 15, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

76. On or about May 16, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

77. On or about May 20, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

78. On or about May 20, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

79. On or about May 29, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

80. On or about June 5, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

81. On or about June 5, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

82. On or about June 11, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

83. On or about June 11, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

84. On or about June 18, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

85. On or about June 18, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

86. On or about June 24, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

87. On or about July 9, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

88. On or about July 10, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

89. On or about July 16, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

90. On or about July 17, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

91. On or about July 23, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

92. On or about July 23, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

93. On or about August 13, 2019, Plaintiff received a solicitation to "Gloria J. Knox" at Plaintiff's home address.

94. On or about August 20, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

95. On or about September 4, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

96. On or about September 11, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

97. On or about September 15, 2019, Plaintiff received a solicitation to "Knox G. Myles" at Plaintiff's home address.

98. Plaintiff received dozens more solicitations from Capital One, addressed to "Gloria J. Knox" or "Knox G. Myles" over the last two years, which he did not record the dates of receipt, but which he retained.

99. In all, Plaintiff advised Capital One on at least three separate occasions that Ms. Knox was no longer living and the continued solicitations were causing Plaintiff unnecessary and undue grief, anxiety, and distress.

100. Further, Plaintiff had previously contacted the national consumer Opt-Out hotline and requested that solicitations for Gloria Knox be stopped.

101. The constant barrage of advertising materials sent to Plaintiff Knox reminded him of the loss of his wife, and left him sad and depressed. Moreover, his inability to get the marketing to stop left him feeling less than human.

102. Capital One acted with blatant, intentional, and willful disregard of Plaintiff's right of privacy, and continued to mail these solicitations, addressing them to Ms. Knox to Plaintiff's home address.

103. Capital One acted with blatant, intentional, and willful disregard in obtaining Ms. Knox's credit information from consumer reporting agencies under the false pretenses that Capital One was making legitimate firm offers of credit, when Capital One had actual or constructive knowledge that these offers were a sham because Ms. Knox predeceased them.

104. Capital One intentionally inflicted emotional distress on Plaintiff by continuing to mail solicitations addressed to Ms. Knox at Plaintiff's home address even though Capital One had actual or constructive knowledge that these solicitations served no business purpose, exacerbated Plaintiff's grief, and caused Plaintiff to experience distress and anguish.

105. Capital One acted maliciously toward Plaintiff, and with intentional disregard of Plaintiff's rights.

### ***The FCRA***

106. The FCRA creates substantive rights for consumers and persons with special relationships to those consumers; consumer reporting violations cause injury to consumers, and such injuries are concrete and particularized when they result in the unauthorized sharing of consumers' private credit information. *See, e.g., Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015).

107. Moreover, Congress has explicitly described the FCRA as responding to "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4). For this

reason, and to encourage consumers to bring FDCPA actions, Congress authorized statutory damages awards for negligent and intentional violations. 15 U.S.C. §§ 1681n, 1681o.

108. 15 U.S.C. § 1681b(c) governs the furnishing of credit reports in connection with credit or insurance transactions that are not initiated by the consumer, and prohibits the furnishing of these reports unless the consumer authorizes the consumer reporting agency to provide such a report or "the transaction consists of a firm offer of credit or insurance."

109. 15 U.S.C. § 1681b(e) governs the consumer's right to have the consumer's name and address excluded from any list provided by a consumer reporting agency in connection with a credit or insurance transaction that is not initiated by the consumer by notifying the agency. When a consumer asserts this right by using the opt-out hotline, consumer reporting agencies are required to exclude the consumer's name and address from its lists no more than five (5) business days after the date on which the consumer notifies the agency.

110. 15 U.S.C. § 1681q prohibits "knowingly and willfully obtain[ing] information on a consumer from a consumer reporting agency under false pretenses."

### *The Wisconsin Right of Privacy*

111. The right of privacy is recognized in Wisconsin and Wisconsin law recognizes a cause of action of individuals whose privacy is unreasonably invaded. Wis. Stat. § 995.50(1).

112. Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass is an invasion of privacy. Wis. Stat. § 995.50(2)(a).

113. The Wisconsin Court of Appeals has held that unwanted solicitations are highly offensive and may rise to the level of actionable trespass. *Sawyer v. West Bend Mut. Ins. Co.*, 2012 WI App 92, ¶ 22.

114. Even assuming that not every piece of junk mail is actionable under Wis. Stat. § 995.50(2)(a), *see, Baemmert v. Credit One Bank, N.A.*, No. 16-cv-540-jdp, 2017 U.S. Dist. LEXIS 176191, at *5 (W.D. Wis. Oct. 24, 2017) (citing *Sawyer*, 2012 WI App 92, ¶ 35 (J. Fine, dissenting)), repeated and persistent unwanted solicitations, which serve no legitimate business purpose and for which the recipient has expressly requested cessation and peace, are actionable unwanted trespasses.

### *Infliction of Emotional Distress*

115. Wisconsin law recognizes the common law torts of Intentional and Negligent Infliction of Emotional Distress.

116. "One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress and the bodily harm resulting from it." *Alsteen v. Gehl*, 124 N.W.2d 312, 317 (Wis. 1963).

117. Interpreting Wisconsin law, the Seventh Circuit recently observed that a defendant's conduct is actionable for intentional infliction of emotional distress when it is "so extreme and outrageous that 'an average member of the community' would find her behavior 'a complete denial of [the plaintiff's] dignity as a person.'" *Howard v. Koeller*, 2018 U.S. App. LEXIS 34640, at *11 (7th Cir. 2018) (quoting *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559-60 (7th Cir. 1991)).

118. Wisconsin courts also "recognize a claim for negligent infliction of emotional distress where the claimant is directly involved in the tortious activity." *Pierce v. Physicians Ins. Co. of Wis., Inc.*, 2005 WI 14, ¶ 17.

119. "A plaintiff claiming negligent infliction of emotional distress, *regardless of the fact situation in which the claim arises*, must prove the following elements: (1) that the defendant's

14

conduct fell below the applicable standard of care, (2) that the plaintiff suffered an injury, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury." *Camp v. Anderson*, 2006 WI App 170, ¶ 16.

120. A defendant is liable for negligent infliction of emotional distress if the plaintiff shows "negligent conduct, causation, and severe emotional distress."

## COUNT I – FCRA

121. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

122. Capital One purported to make hundreds of "firm offers of credit" to Ms. Knox notwithstanding Defendant's knowledge that Ms. Knox had predeceased these offers.

123. Upon information and belief, Capital One obtained Ms. Knox's credit information in connection with these purportedly firm offers of credit even though Capital One had knowledge that Ms. Knox had predeceased these offers.

124. Upon information and belief, Capital One obtained Plaintiff's credit information in connection with these purportedly firm offers of credit to Ms. Knox even though Defendant had knowledge that Ms. Knox had predeceased these offers.

125. Defendant obtained Plaintiff's and Ms. Knox's credit information under false pretenses, namely the pretextual purpose of making a firm offer of credit to a predeceased offeree.

126. Defendant violated 15 U.S.C. §§ 1681b(c) and 1681q.

## COUNT II – Wisconsin Right of Privacy

127. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

128. Defendant's repeated, unsolicited advertisements addressed to Ms. Knox at Plaintiff's home address in spite of Defendant's knowledge that Ms. Knox predeceased these offers were highly offensive trespasses to Plaintiff in Plaintiff's home.

129. Plaintiff advised Defendant that these unsolicited advertisements were unwanted and highly offensive, and specifically requested that Defendant cease these unwanted and unsolicited advertisements.

130. Notwithstanding Plaintiff's specific requests that Defendant cease these highly offensive advertisements, Defendant has continued to mail unsolicited and unwanted firm offers of credit addressed to Ms. Knox at Plaintiff's home.

131. Defendant's highly offensive and unwanted solicitations have caused Plaintiff severe emotional distress, and this emotional distress has manifested itself physically.

132. Defendant violated Wis. Stat. § 995.50(2)(a).

## COUNT III – Intentional Infliction of Emotional Distress

133. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

134. Defendant's repeated, unsolicited advertisements addressed to Ms. Knox at Plaintiff's home address in spite of Defendant's knowledge that Ms. Knox predeceased these offers were highly offensive trespasses to Plaintiff in Plaintiff's home.

135. Plaintiff advised Defendant that these unsolicited advertisements were unwanted and highly offensive, and specifically requested that Defendant cease these unwanted and unsolicited advertisements.

136. Notwithstanding Plaintiff's specific requests that Defendant cease these highly offensive advertisements, Defendant has continued to mail unsolicited and unwanted firm offers of credit addressed to Ms. Knox at Plaintiff's home.

137. Defendant's highly offensive and unwanted solicitations have caused Plaintiff severe emotional distress, and this emotional distress has manifested itself physically.

138. Defendant is liable to Plaintiff for intentional infliction of emotional distress.

## **CLASS ALLEGATIONS**

139. Plaintiff brings this action on behalf of a Class seeking prospective equitable relief.

140. The Class consists of (a) all natural persons in the United States of America, (b) who contacted the national "Opt Out" hotline, (c) to request that Capital One cease mailing prescreened offers of credit and insurance to them or to third-party persons on whose behalf they are authorized to act, including but not limited to persons for whom they are the legal parent, guardian, executor, administrator, and (d) to whom Capital One continued to send prescreened offers of credit and insurance to the person's address, (e) which prescreened offers were mailed between September 9, 2018 and September 9, 2020.

141. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

142. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the person contacts the national Opt Out hotline, and the duties that "opting out" puts on Defendants.

143. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

144. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

145. A class action is necessary because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## **JURY DEMAND**

146. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 9, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com